AO 91 (Rev. 11/11) Criminal Complaint          AUSA Andrew C. Erskine (312) 353-1875

FILED
8/20/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| UNITED STATES OF AMERICA | CASE NUMBER: **20CR525** |
|---|---|
| v. | UNDER SEAL |
| WILLIAM LORENZ and IVAN BERMUDEZ | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about May 31, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, the defendants violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2118(d) | conspiracy to, without authority, enter and attempt to enter, and remain in, the business premises and property of a person registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act (21 U.S.C. 822) with the intent to steal any material and compound containing any quantity of a controlled substance, and use any facility in interstate and foreign commerce to facilitate such entry and attempt and to facilitate remaining in such premises and property |

This criminal complaint is based upon these facts:

　X　Continued on the attached sheet.

BLAKE SMITH
Special Agent, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: August 20, 2020

*Judge's signature*

City and state: Chicago, Illinois      HEATHER K. MCSHAIN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, BLAKE SMITH, being duly sworn, state as follows:

1. I am currently employed as a Special Agent with the Department of Justice, Drug Enforcement Administration (DEA), and have been so employed since April 2004. I am currently assigned to the Chicago Field Division, Tactical Diversion Squad (TDS). Prior to working for the DEA, I was employed as a Police Officer for the Chicago Police Department for approximately four years. As part of my regular duties as a Special Agent, I investigate criminal violations of the federal narcotics laws, including Title 21, United States Code, Sections 846 and 841(a)(1). In connection with narcotics investigations, I have participated in monitoring pen registers and Title III wiretaps, debriefed informants, and participated in controlled buys in an undercover capacity. I have also been involved in various types of investigations, and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking, and of the laundering and concealing of proceeds of drug trafficking defendants. I have received specialized training in the enforcement of laws concerning the activities of narcotics traffickers.

2. This affidavit is submitted in support of a criminal complaint alleging that WILLIAM LORENZ and IVAN BERMUDEZ have violated Title 18, United States Code, Section 2118(d). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging

LORENZ and BERMUDEZ with violating Title 18, United States Code, Section 2118(d), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and officers, and my review of surveillance footage, body-worn camera footage, records, and other materials.

4. In summary, on or about May 31, 2020, WILLIAM LORENZ was arrested after fleeing from a Walgreens. Controlled substances were subsequently found in LORENZ's car, which was parked behind the Walgreens. LORENZ identified IVAN BERMUDEZ as a friend who had gone inside the Walgreens. A review of surveillance footage from three Walgreens showed LORENZ and BERMUDEZ inside the three pharmacies without authorization, searching among and/or removing drugs on the shelves.

***On May 31, 2020, LORENZ was Arrested After Fleeing a Walgreens, and Officers Found Controlled Substances in his Nearby Car***

5. On or about May 31, 2020, at approximately 9:30 p.m., during a mandatory citywide curfew instituted as a result of civil unrest in the area, members of the Chicago Police Department responded to a call of looting and/or burglary in

progress at the Walgreens store located at 4001 W. Irving Park Road, Chicago, Illinois.[1]

6. Upon arrival at the Walgreens, members of the Chicago Police Department observed that a front window of the Walgreens had been broken. At approximately the same time, Chicago Police Officer Jeremy Carter arrived on scene and observed multiple unknown individuals exiting the Walgreens's rear door and attempting to flee the area on foot. As depicted on his body-worn camera footage, Officer Carter began to pursue one of the fleeing individuals.

7. After a brief foot chase, Officer Carter apprehended the individual, subsequently identified as WILLIAM LORENZ, about a block away from the Walgreens. Officer Carter placed LORENZ in handcuffs and walked him back to the Walgreens parking lot.

8. Officer Carter conducted a custodial search and located keys to a Honda vehicle on LORENZ. Officer Carter also found a black ski mask on LORENZ.

9. Shortly thereafter, members of the Chicago Police Department located a 2008 Honda Civic, with Illinois registration X390111, parked in the alley behind the Walgreens. A check of law enforcement databases revealed that the Honda was registered to LORENZ and a woman with the same last name. Further, the keys found on LORENZ unlocked the Honda.[2]

---

[1] Based on my training, experience, and communications with colleagues, I know that Walgreens is registered with the DEA under section 302 of the Controlled Substances Act (21 U.S.C. 822).

[2] Based on my training and experience, I am aware that an automobile is a facility in interstate commerce.

10. Two Chicago Police Officers searched the Honda. An Officer also located a bag near the back door of the Walgreens.[3] According to the body-worn camera footage, the CPD case and arrest reports, the CPD inventory reports, and the Illinois State Police laboratory report, the following items were found in either the Honda or the bag:[4]

    a. 536.4 grams of liquid that was laboratory confirmed for the presence of codeine

    b. A glass jar containing 105 white oblong tablets;[5]

---

[3] It is unknown whether this bag was abandoned by LORENZ, BERMUDEZ, or someone else.

[4] It appears CPD inventoried the controlled substances found in the Honda together with the controlled substances found in the bag. At this point in time, DEA investigators are still attempting to confirm the precise contents of the bag and Honda. The CPD Original Case Incident report says the Honda contained, "SEVERAL PLASTIC CONTAINERS OF PRESCRIPTION DRUGS CONTAINING CODEINE (PILLS), CODEINE (LIQUID), AND TWO GLASS BOTTLES CONTAINING HYDROCODEINE PILLS." However, the same report identifies only the following in the Honda: "16 HITS/PILLS OF CODEINE/LIQUID," "105 HITS/PILLS OF CODEINE/PILLS IN PACKAGE," and "45 HITS/PILLS OF CODEINE/PILLS." Meanwhile, the arrest report for LORENZ states that the Honda contained, "BOTTLES OF VARIOUS PRESCRIPTION NARCOTICS (BOTH LIQUID CODEINE SYRUPS, AND HYDROCODONE AND CODEINE PILLS)," while the bag contained, "SEVERAL MORE BOTTLES Of PRESCRIPTION NARCOTICS."

I believe that the 105 white and 45 yellow oblong tablets suspected to be Hydrocodone, both contained in glass jars, were in the Honda because they can be seen in the body-worn camera footage during the search of the car. In addition, I believe the white plastic bottles containing confirmed or suspected Hydrocodone were in the Honda and not in the bag. This is based on my belief that the items in the car did not come from the Walgreens on Irving Park Road, since LORENZ ran away from the Walgreens and was arrested with the key to the Honda. In addition, according to a loss report submitted to the DEA by the Walgreens on Irving Park Road in connection with the activity of May 31st and June 1st, Walgreens did not lose any pills, including any Hydrocodone pills. This is consistent with the surveillance footage that showed LORENZ and others attempting to access the Schedule II locker but not succeeding, and then fleeing shortly thereafter. Accordingly, I believe the bottles of pills, including the confirmed Hydrocodone, came from the Honda.

[5] About these items, the ISP lab report states: "Physically resembles a pharmaceutical preparation containing Hydrocodone; no further analysis."

4

    c.     A glass jar containing 45 yellow oblong tablets;[6]

    d.    22 plastic bottles containing liquid.[7]

    e.    White plastic bottles containing:

        i.    50.3 grams of 59 capsule shaped pink tablets, which was laboratory confirmed for the presence of Hydrocodone;

        ii.    469.9 grams of 540 capsule shaped pink tablets;[8]

        iii.    64.7 grams of 152 capsule shaped white tablets;[9]

        iv.    14.5 grams of 34 capsule shaped yellow tablets;[10]

    f.    128 grams of one factory sealed plastic bottle;[11]

    g.    72 grams of one factory sealed plastic bottle;[12]

    h.    187.5 grams of 399 round white tablets;[13]

11.    Based on my training and experience, I know that Hydrocodone is a Schedule II controlled substance, and cough syrup with codeine is a Schedule V controlled substance.

12.    LORENZ was subsequently transported to the Chicago Police Department's 17th District police station. As recorded by a body-worn camera, at approximately 11:36 p.m., Officer Carter read LORENZ his *Miranda* rights, and

---

[6] About these items, the ISP lab report states: "Physically resembles a pharmaceutical preparation containing Hydrocodone; no further analysis."

[7] About these items, the ISP lab report states: "Not Analyzed." The CPD inventory describes these bottles as, "16 OZ BOTTLES VARIOUS CODEINE LIQUID SYRUPS."

[8] About these items, the ISP lab report states: "Physically resembles a pharmaceutical preparation containing Hydrocodone; no further analysis."

[9] About these items, the ISP lab report states: "Physically resembles a pharmaceutical preparation containing Hydrocodone; no further analysis."

[10] About these items, the ISP lab report states: "Physically resembles a pharmaceutical preparation containing Hydrocodone; no further analysis."

[11] About these items, the ISP lab report states: "Not Analyzed."

[12] About these items, the ISP lab report states: "Not Analyzed."

[13] About these items, the ISP lab report states: "Not Analyzed."

LORENZ agreed to answer questions. Among other things, LORENZ agreed that he had driven the Honda to the Walgreens that night. Officer Carter noted the presence of "bottles of codeine from Walgreens inside that vehicle," to which LORENZ stated, "those weren't from the Walgreens, they were from a friend that I was with."[14] LORENZ agreed that this person was in the car with him, that the person also took off running, and that the person was not "in the station right now" [i.e., not arrested]. LORENZ said the other person went inside the Walgreens while LORENZ was "just around the area" and never went inside the Walgreens.[15] LORENZ said the other individual did not grab anything from inside the Walgreens. When asked about the multiple bottles of codeine in the bag in LORENZ's car, LORENZ said, "he had them in the bag when I picked him up." When asked for the friend's name, LORENZ said "Ivan Bermudez." LORENZ said the last residential address he knew for BERMUDEZ was near Moffat and Kedzie. When asked about the "jar of pills" in the car, LORENZ said, "All of those things are his."

---

[14] Any quoted language, transcriptions, or summaries of communications set forth in this Affidavit are non-final drafts. Summaries, quotations, or transcriptions set forth in this Affidavit do not include all potentially criminal communications, or all statements or topics covered during the course of the conversations. The communications set forth in this Affidavit often include my understanding and my fellow investigators' and agents' understandings, of what is being said during such conversations set forth in brackets. This understanding and interpretation of the conversations is based on (i) the content and context of the conversations, (ii) my experience and my fellow agents' experiences as law enforcement officers, and (iii) the investigation to date.

[15] As described below, this statement was false. Surveillance footage showed LORENZ inside the Walgreens on Irving Park Road.

*__Surveillance Footage Showed LORENZ and BERMUDEZ Inside the Pharmacy in the Walgreens at 4001 W. Irving Park Road, as well as Inside Two Other Walgreens Pharmacies__*

13. Subsequent to the events that occurred on May 31, 2020, members of DEA TDS acquired copies of surveillance footage for the Walgreens at 4001 W. Irving Park Road, and for other Walgreens stores that were burglarized during the civil unrest of late-May and early-June 2020.

14. A review of the Walgreens security camera footage from May 31, 2020, showed the two individuals depicted below—believed to be LORENZ and BERMUDEZ, as detailed below—inside the pharmacy without authorization at the Walgreens stores located at 1627 N. Pulaski (approximately 6:48 p.m.), 3110 W. Armitage (approximately 7:19 p.m.),[16] and 4001 W. Irving Park (approximately 9:27 p.m.), searching among and/or removing drugs on the shelves within the pharmacies:[17]

---

[16] According to Walgreens, no controlled substances were stolen from the store located at 3110 W. Armitage. However, a quantity of Promethazine syrup was stolen. Based on my training and experience, I know that Promethazine syrup is not a controlled substance, but that Promethazine syrup with codeine is a controlled substance. I also know that Promethazine syrup with codeine is commonly illegally consumed for recreation, but Promethazine syrup without codeine is not, generally speaking, intentionally consumed for recreation. Accordingly, based on my training, experience, and the investigation to date, I believe LORENZ and BERMUDEZ inadvertently stole bottles of Promethazine syrup without codeine, when they actually intended to steal bottles of Promethazine syrup with codeine (a controlled substance) from the Armitage location.

[17] For ease of viewing, the brightness has been increased by 60% on the first, second, and fourth pictures.

1627 N. Pulaski




3110 W. Armitage




<u>4001 W. Irving Park</u>




15. I believe the individual who is wearing all black, with a red shirt sticking out at the bottom, and who is also wearing a black ski mask, is LORENZ. This is based on a review of the body-worn camera footage from the time of LORENZ's arrest (pictured below), and also on the fact that Officer Carter recovered a black ski mask from LORENZ:

9



16.     As noted above, LORENZ identified "Ivan Bermudez" as the friend who went inside the Walgreens store on Irving Park Road. LORENZ further stated that BERMUDEZ had lived near Kedzie Avenue and Moffat Street. A search of criminal history records revealed an individual by that name who has a prior listed residence near the corner of Kedzie Avenue and Moffat Street. Based on this information, investigators obtained the following governmental photo of IVAN BERMUDEZ:



17. According to the criminal history records, as of January 2020, BERMUDEZ was 6 feet 1 inch tall and he weighed 235 pounds.

18. I believe the individual in the green hooded sweatshirt in the surveillance footage pictures above is BERMUDEZ, based on the similarity of facial features, the similarity of height and weight, and the fact that LORENZ identified BERMUDEZ as a friend who went inside the Walgreens.

19. As depicted in the surveillance footage for 4001 W. Irving Park, at approximately 9:28 p.m., LORENZ attempted to access the locker containing the Schedule II controlled substances, but he was unable to gain access:[18]

---

[18] Based on my training and experience, I know that pharmacies typically store their Schedule II controlled substances in a locker or safe, unless they are awaiting pick up by a patient.

11



12

20. Based on the foregoing, I respectfully submit that there is probable cause to believe that WILLIAM LORENZ and IVAN BERMUDEZ did conspire to, without authority, enter and attempt to enter, and remain in, the business premises and property of a person registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act (21 U.S.C. 822) with the intent to steal any material and compound containing any quantity of a controlled substance, and use any facility in interstate and foreign commerce to facilitate such entry and attempt and to facilitate remaining in such premises and property.

FURTHER AFFIANT SAYETH NOT.

BLAKE SMITH
Special Agent, Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me on August 20, 2020.

Honorable HEATHER K. MCSHAIN
United States Magistrate Judge

13