FILED
4/26/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 525-1 |
| v. | |
| WILLIAM LORENZ | Judge Gary Feinerman |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant WILLIAM LORENZ, and his attorney, GEORGE PAPPAS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2. The indictment in this case charges defendant with conspiring to burglarize a pharmacy, in violation of Title 18, United States Code, Section 2118(d) (Count One), and burglarizing a pharmacy, in violation of Title 18, United States Code, Section 2118(b) (Counts Two, Three, and Four).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with conspiring to, without authority, enter and attempt to enter, and remain in, the business premises and property of a person registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act (21 U.S.C. § 822), namely, a pharmacy, with the intent to steal a material and compound containing a quantity of a controlled substance, and to use a facility in interstate commerce to facilitate such entry, attempted entry, and remaining in such premises and property, in violation of Title 18, United States Code, Section 2118(d).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about May 31, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, defendant WILLIAM LORENZ did conspire with Ivan Bermudez, to, without authority, enter and attempt to enter, and remain in, the business premises and property of a person registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act (21 U.S.C. § 822), namely, a pharmacy, with the intent to steal a material and compound containing a quantity of a controlled substance, and to use a facility in interstate commerce to

2

facilitate such entry, attempted entry, and remaining in such premises and property, in violation of Title 18, United States Code, Section 2118(b), all in violation of Title 18, United States Code, Section 2118(d).

More specifically, on the evening of May 31, 2020, during a period of civil unrest in the Chicago area, Bermudez called LORENZ, told LORENZ he was looting, and said he was near LORENZ's house getting more tools to facilitate his looting. LORENZ decided to join Bermudez. LORENZ and Bermudez decided to break into pharmacies in order to steal codeine syrup and OxyContin.

At approximately 6:00 p.m., Bermudez and LORENZ drove in LORENZ's car to the Walgreens located near 1600 N. Pulaski Road in Chicago. When they arrived, they saw that the Walgreens had already been broken into. Bermudez and LORENZ went inside to see if there was still any codeine syrup or OxyContin for them to take. LORENZ did not take anything because LORENZ did not find anything LORENZ wanted. They then returned to LORENZ's car.

Next, they drove in LORENZ's car to a Walgreens near 3100 West Armitage Avenue. They entered the store to see if there was any codeine syrup or OxyContin for them to take. When they arrived at the pharmacy, they saw it was still locked. LORENZ used a sledgehammer to break the window on the pharmacy door and then LORENZ stuck his hand through the broken window and unlocked the door from the inside. LORENZ searched the pharmacy for OxyContin and codeine syrup, but

LORENZ did not find anything. They then returned to LORENZ's car, which was parked approximately a half a block away.

After some time, LORENZ and Bermudez next decided to go to a Walgreens near 4000 West Irving Park Road, which they drove to in LORENZ's car. When they arrived, LORENZ parked his car in the back. They observed that some other individuals they did not know were already trying to get into the back door of the Walgreens. Someone decided to break in through the front door instead. After the front door was opened, LORENZ entered the store and went toward the pharmacy which was still locked. They eventually broke into the pharmacy by using a sledgehammer to break the window to the pharmacy door and then LORENZ slid his hand inside to unlock the door. Bermudez and LORENZ entered the pharmacy to see if there was any codeine syrup or OxyContin for them to take. The other individuals were also searching the pharmacy. LORENZ saw that all of the Adderall and OxyContin was stored in a locked cabinet. One of the other individuals hit the cabinet one time with a sledgehammer but it did not budge. Bermudez and LORENZ subsequently left the pharmacy without removing any items.

LORENZ acknowledges that the cost to repair the damage to the pharmacy window and pharmacy door at the locations on Armitage Avenue and Irving Park Road totaled approximately $7,851.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to

be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate

deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     The base offense level is 12, pursuant to Guideline §§ 2B2.1(a)(2) and 2X1.1(a).

ii.     One level is added, pursuant to Guideline § 2B2.1(b)(2)(B), because the loss attributable to defendant was more than $5,000 but less than $20,000.

iii.     One level is added, pursuant to Guideline § 2B2.1(b)(3), because the taking of a controlled substance was an object of the offense.

6

iv.     Two levels are added, pursuant to Guideline § 2B2.1(b)(4), because a dangerous weapon (a sledgehammer) was possessed.

v.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 2 and defendant's criminal history category is II:

7

i.       On or about July 28, 1999, defendant was convicted of possession of cannabis (misdemeanor) in the Circuit Court of Cook County, Illinois, and sentenced to three months' court supervision. Pursuant to Guideline § 4A1.2(e), defendant receives 0 criminal history points for this conviction.

ii.      On or about June 8, 2001, defendant was convicted of retail theft (misdemeanor) in the Circuit Court of Cook County, Illinois, and sentenced to one year's court supervision. Pursuant to Guideline § 4A1.2(e), defendant receives 0 criminal history points for this conviction.

iii.     On or about March 17, 2005, defendant was convicted of criminal defacing of property (misdemeanor) in the Circuit Court of Cook County, Illinois, and sentenced to one year's conditional discharge. Pursuant to Guideline § 4A1.2(e), defendant receives 0 criminal history points for this conviction.

iv.      On or about September 5, 2008, defendant was convicted of assault (misdemeanor) and criminal damage to property (misdemeanor) in the Circuit Court of Cook County, Illinois, and sentenced to one day's jail. Pursuant to Guideline § 4A1.2(e), defendant receives 0 criminal history points for this conviction.

v.       On or about August 26, 2009, defendant was convicted of criminal defacing of property (misdemeanor) in the Circuit Court of Cook County, Illinois, and sentenced to three months' conditional discharge. Pursuant to Guideline § 4A1.2(e), defendant receives 0 criminal history points for this conviction.

vi.    On or about September 3, 2013, defendant was convicted of disobeying a traffic sign in the Circuit Court of Cook County, Illinois, and fined. Pursuant to Guideline § 4A1.2(c)(2), defendant receives 0 criminal history points for this conviction.

vii.    On or about October 1, 2014, defendant was convicted of possession of cannabis (misdemeanor) in the Circuit Court of Cook County, Illinois, and sentenced to one day's jail. Pursuant to Guideline § 4A1.2(j), defendant receives 0 criminal history points for this conviction.

viii.    On or about November 30, 2015, defendant was convicted of burglary in the Circuit Court of Cook County, Illinois, and sentenced to 24 months' probation. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

ix.    On or about December 22, 2015, defendant was convicted of retail theft (misdemeanor) in the Circuit Court of Cook County, Illinois, and sentenced to 2 days' jail. Pursuant to Guideline § 4A1.1(c), defendant receives 1 criminal history point for this conviction.

d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 13 which, when combined with the anticipated criminal history category of II, results in an anticipated advisory sentencing guidelines range of 15 to 21 months'

imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

       e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

       f.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by

10

such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guideline range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the victim is $7,851, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the

United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 525-1.

21.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other

person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving

14

defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

15

b. **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

16

23.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

24.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

25.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17

26.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

18

## **Conclusion**

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _04/19/2021_____


_____
Lindsay Jenkins on behalf of
JOHN R. LAUSCH, JR.
United States Attorney


_____
ANDREW C. ERSKINE
Assistant U.S. Attorney


_____
WILLIAM LORENZ
Defendant


_____
GEORGE PAPPAS
Attorney for Defendant


21